IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTH ANN PUNKO, | : |
| | : |
| Plaintiff, | :   CIVIL ACTION NO. 06-CV-770 |
| | : |
| v. | : |
| | : |
| M.S. CARRIERS, INC., SWIFT TRANSPORTATION CO., INC., SEARS LOGISTICS SERVICES, INC., and JOHN RUSKOSKI | :   (JUDGE CONABOY) |
| | : |
| Defendants. | : |

**MEMORANDUM**

Before the Court is Defendant, John Ruskoski's, Motion for Summary Judgment and brief in support.[1] (Docs. 54, 55.) For the following reasons, we will grant Defendant, John Ruskoski's, Motion for Summary Judgment (Doc. 54) and dismiss the Complaint (Doc. 1) as to Defendant John Ruskoski ("Defendant Ruskoski").

**I.   FACTUAL BACKGROUND**[2]

In November of 2002, Plaintiff began employment as a truck driver for M.S. Carriers, Inc.[3] On June 13, 2001, Plaintiff sustained a work-related knee injury while unloading pallets from

---

[1] Additionally, pending before the Court is Defendants M.S. Carriers, Inc. and Swift Transportation Services, Inc.'s Motion for Summary Judgment. (Doc. 50.) We will address this motion in a separate Memorandum and Order.

[2] The factual background is primarily derived from Plaintiff's Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment (Doc. 81).

[3] On January 2, 2002, Swift Transportation Co., Inc. acquired M.S. Carriers, Inc.

her truck requiring surgery.  Sometime in 2001, Plaintiff was released to sedentary duty at the company's facility in Ashley, Pennsylvania.  From September to December 3, 2001, Plaintiff was taken off all work because of pain and her reaction to Darvocet medication.

On December 3, 2001, Dr. O'Brien released Plaintiff back to sedentary work and she was assigned to the M.S. Carriers, Inc. office located in the Sears Terminal in Ashley.  According to Plaintiff, Terminal Manager Tom Deremer told her to report to work with the night duty employee, Defendant Ruskoski.  Plaintiff's hours were 6:00 p.m. to 3:00 a.m.  Other than drivers handing in paperwork on their loads, Plaintiff and Defendant Ruskoski were the only employees present in the facility at night.  Plaintiff asserts she spent most of her time reading a book because there was not much for her to do.

On December 9, 2001, Plaintiff alleges she was at work when she was sexually assaulted and harassed by Defendant Ruskoski. According to Plaintiff, Defendant Ruskoski asked her to rub his neck and help get a kink out of it.  Plaintiff states she rubbed his neck and Defendant Ruskoski started to unbutton his shirt.  As alleged by Plaintiff, she asked him what he was doing when, "he grabbed her and pushed her up against the desked and kissed her with his tongue down her throat."  (Doc. 81 at 3.)  After pushing Defendant Ruskoski away, Plaintiff asserts Defendant Ruskoski felt

2

her breasts and legs.  It is contended by Plaintiff that she told Defendant Ruskoski to stop and he did.  Plaintiff alleges Defendant Ruskoski later pinned her against a wall, kissed her, and attempted to put his hand under her sweater.  According to Plaintiff, she pushed Defendant Ruskoski away again and told him to stop.  As alleged by Plaintiff, after a period of time passed Defendant Ruskoski told her she was beautiful, tried kissing her, and tried to push her out of the room they were in and towards the bathrooms, which she resisted.

 The next day Plaintiff contacted her human relations supervisor, Mr. Coker, and reported the alleged actions of Defendant Ruskoski.  Mr. Coker referred her to Mike Crum in human relations.  After she left a message on Mr. Crum's voice mail, he called her back and told her to fax a report in 500 words or less recounting her allegation because he was leaving.  Plaintiff faxed her report.

 The day after she faxed her report, Mr. Crum asked Plaintiff to send him a more detailed complaint in a couple of days. Plaintiff attempted to contact Mr. Crum and Mr. Coker on several occasions and left voice messages but never received a response.

 Plaintiff contacted the Hanover Township Police Department a few days later regarding the alleged incident.  Tom Deremer spoke to Plaintiff on that Monday or Tuesday and notified her she was being moved to the day shift.  According to Plaintiff, Mr. Deremer

3

told her because she went to the police his office would not help her.  As asserted by Plaintiff, one of the female employees on day shift made comments to her that it was wrong to report the sexual harassment.  Additionally, Plaintiff alleges a driver made comments to her accusing people of doing wrong things and freeloading off the company every day.  Plaintiff contends she complained to Tom Mack about the driver resulting in the driver making further comments when Mr. Mack was not around.  After complaining again, Plaintiff asserts Mr. Mack stated he could not do anything about it.

On December 13, 2001, Sergeant Al Walker of the Hanover Township Police Department contacted Mr. Crum and informed him Plaintiff filed a complaint regarding the alleged incident with Defendant Ruskoski.  Mr. Crum recommended to his superior the M.S. Carriers, Inc., investigation of the incident should wait for the police to complete their investigation.

On February 22, 2002, Defendant Ruskoski resigned from M.S. Carriers, Inc.  His stated reason for leaving employment was his health.  At the time, his blood pressure was high.  A week later, his blood pressure was normal when he began employment with Martz Trailways.

On February 27, 2002, Sergeant Walker filed a criminal harassment charge against Defendant Ruskoski regarding the alleged incident with Plaintiff.  On April 30, 2002, a summary trial was

4

held before Magistrate Judge Joseph Halesey.  On May 1, 2002, the Magistrate Judge issued his decision finding Defendant Ruskoski guilty of summary harassment.

Also on May 1, 2002, Tom Mack informed Plaintiff she was being assigned to the guard shack at the terminal in Ashley effective the following Monday.  According to Plaintiff, when she inquired why she was being transferred he told her there was no room for her at the office where she had been working.  Plaintiff asserts she complained to her new supervisor "Charlie" and the "Right to Work Coordinator" named "Lena."  Tom Deremer would not return her calls.

The ashley terminal was being changed from a "secure location" to an "unsecure" terminal.

The first day Plaintiff arrived at the guard shack outside the Ashley terminal no one met her to explain her duties.  She had been told two guards would be there, but they never arrived.  On her second day, someone came and took the heater from the shack.  The third day someone took the telephone.  Plaintiff then called Tom Mack from a payphone on the side of the building. According to Plaintiff, Mr. Mack told her she did not need a telephone because the payphone was at the location.  On the fourth day, the terminal was closed and the door locked resulting in Plaintiff no longer having access to a bathroom.  As asserted by Plaintiff, she complained to "Charlie" who told her they would get back to her. When no one called Plaintiff back, she call the Occupational Safety

and Health Adminatration ("OSHA") and reported the lack of bathroom facilities.

Plaintiff asserts the guard shack was inappropriate because she had a knee injury and was required to walk a long distance from the shack to the drop yard where the drivers dropped the trailers. At the time, Plaintiff was restricted from walking any distance due to her knee injury even though she only logged an average of three (3) or four (4) trucks a day.  Additionally, Plaintiff contends she was verbally harassed by drivers who came to the terminal alleging the drivers made comments about whether Plaintiff would file a complaint against them.

In May of 2002, Plaintiff was prescribed physical therapy which caused her to miss work.  Her employer cut her pay as a result of missing work.  According to Plaintiff, Tom Deremer stated she was written up for misconduct because she took too much time off for her medical appointments.

On May 26, 2002, Dr. Wolanin advised Plaintiff not to return to work because her leg was swollen and turning blue.  Plaintiff gave Mr. Mack and "Lena" a doctor's note releasing her from work for May 21, 2002, through June 5, 2002.  On June 3, 2002,[4] Dr. Baxi restricted Plaintiff from work until further notice.  Plaintiff's

---

[4] Although Plaintiff's Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment states Dr. Baxi restricted Plaintiff from work on June 3, 2001, we note the time line recited in Plaintiff's document suggests the correct date was June 3, 2002. (Doc. 81 at 6.)

husband delivered Dr. Baxi's note to Mr. Mack.

On December 23, 2002, Dr. O'Brien opined Plaintiff was permanently disabled from her prior employment as a truck driver and restricted her to light duty with no heat extremes.  She then faxed Dr. O'Brien's note to M.S. Carriers, Inc.

On December 27, 2002, Plaintiff received a termination notice in the mail from the Right to Work coordinator stating the reason for her termination was "driver abandonment."  Plaintiff contacted "Lena" and explained the stated reason for her termination was incorrect.  A second notice was sent stating Plaintiff quit because of illness or injury.  Again, Plaintiff contested the reason for termination and complained she had not quit.  Plaintiff had complained to "Charlie" about her termination.  "Charlie" told Plaintiff her termination was the result of her not signing a form agreeing to use her employer's Alternative Dispute Resolution process.

According to Plaintiff, the investigation conducted by her employer consisted of a request for Plaintiff to submit a complaint in writing and Mr. Crum's taped interview of Defendant Ruskoski. Plaintiff contends her employer concluded its investigation after Sergeant Walker informed Mr. Crum the police were investigating the incident.

Plaintiff asserts no disciplinary action was ever taken against Defendant Ruskoski for the alleged incident.  The personnel

7

file of Defendant Ruskoski provided to Plaintiff contained no notation regrading the Plaintiff's allegations of December 9, 2001.

According to Plaintiff, she suffered severe emotional and psychological trauma as a result of her transfer to the guard shack.  On December 12, 2001, Plaintiff went to the Victim's Resource Center and received counseling.  On March 26, 2002, Plaintiff began seeing Dr. Margaret Solomon from Confidential Counseling.  Dr. Solomon diagnosed Plaintiff as follows: Axis 1 - Post traumatic stress disorder; Axis III - Pain n the right knee; Axis IV - Assault; and Severity of stress - severe.  In June of 2002, Plaintiff began seeing psychiatrist Dr. Nilesh Baxi because she was not sleeping, suffering panic attacks, anxiety attacks, and she was not eating.  Plaintiff continues to be treated by Dr. Baxi to date with visits every two (2) months.

Dr. Richard Fischbein, Plaintiff's expert psychiatrist, diagnosed Plaintiff as suffering from "post traumatic stress disorder of marked severity" causing nightmares, flashbacks, fear of being around people, paranoia, suspicion, less intimacy, crying spells, and irritability.  (Doc. 81 at 9-10.)  Additionally, Dr. Fischbein's diagnosis was rendered from significant depressive symptoms and agoraphobia.  Additionally, Dr. Fischbein opines the cause of Plaintiff's injuries results from the incident on December 9, 2001, and the subsequent work events.

## II. PROCEDURAL BACKGROUND

On April 13, 2006, Plaintiff Ruth Ann Punko ("Plaintiff") filed a Complaint containing seven (7) counts against the above captioned Defendants. (Doc. 1.) Pursuant to this Court's Order of September 14, 2006, Counts III, V, VI, and VII of the Complaint were dismissed. (Doc. 31.) The remaining counts are: Count I - Title VII Civil Rights Act Sexual Harassment; Count II - Title VII Civil Rights Act Sexual Harassment - Retaliation; and Count IV - Violation of the Pennsylvania Human Relations Act Sexual Harassment. (Doc. 1.)

On February 15, 2007,[5] Defendant Ruskoski filed his Motion for Summary Judgment and brief in support. (Docs. 54, 55.) On March 15, 2007, Plaintiff filed her Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment. (Doc. 81.) On March 29, 2007, Defendant Ruskoski filed a reply brief. (Doc. 85.)

Also on March 29, 2007, Plaintiff filed Plaintiff's Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f) seeking leave of the Court to open discovery for the limited purpose of taking a deposition after the period for discovery had closed. (Doc. 87.) On March 30, 2007, Plaintiff filed Plaintiff's Amended

---

[5] Concurrently, on February 15, 2007, Defendants M.S. Carriers, Inc. and Swift Transportation Services, Inc.'s ("Swift Defendants") filed Defendants' Motion for Summary Judgment (Doc. 50). Swift Defendants' motion is fully briefed, the period for supplemental briefing has passed, and the motion is ripe for disposition. We will consider Swift Defendants' motion in a separate order.

Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f). (Doc. 88.) The motion had concurrence from Swift Defendants but not Defendant Ruskoski. (*Id.*) Defendant Ruskoski did not file an objection to Plaintiff's motion.

On April 4, 2007, this Court issued an Order granting Plaintiff's Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f) for the limited purpose of taking the deposition of Dennis Barry. (*Id.*) The limited discovery was to be completed by April 30, 2007. (*Id.*) The Order established a supplemental briefing schedule concerning Swift Defendants' motion for summary judgement (Doc. 50). (Doc. 89) Although Defendant Ruskoski did not concur in the motion, we ordered the supplemental briefing schedule would apply to his pending Motion for Summary Judgment as well. (*Id.*)

The pending Defendant, John Ruskoski's, Motion for Summary Judgment (Doc. 54) is fully briefed, the period for supplemental briefing has passed, and the motion is now ripe for disposition.

**III. DISCUSSION**

In his brief in support (Doc. 55) and reply brief (Doc. 85), Defendant Ruskoski raises two (2) points of argument for summary judgment and his dismissal as a defendant to this action. He argues Plaintiff's failure to include him as a named defendant in Plaintiff's claims with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC")

requires his dismissal as a defendant. (Doc. 85 at 2.) Additionally, he contends Title VII does not impose liability on individual employees. (*Id.*) Based on the following reasons, we find Defendant Ruskoski is not a proper defendant under the relevant statutes and he will be dismissed from this case.

**A.     SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson*, 477 U.S. at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257.  In determining whether a genuine issue

of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses

may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.    THE MERITS OF THE SUMMARY JUDGMENT MOTION**

It appears Plaintiff has not exhausted the administrative process for her claims against Defendant Ruskoski with the EEOC or PHRC. *See Burgh v. Borough of Montrose*, 251 F.3d 465, 472 (3d Cir. 2001) (*stating* a plaintiff seeking to institute a Title VII suit must bring the action within 300 days of receiving the right to sue letter where the plaintiff cross-filed with a state agency under state law and within 90 days of the receipt of a right to sue letter pursuant to 42 U.S.C. § 2000e-5(e)(1) and § 2000e-5(f)(1)). However, given our determination below that the relevant statutes do not impose liability on an individual employee in circumstances as those presented here, we will not further discussed Defendant Ruskoski's exhaustion argument.

We now turn to Defendant Ruskoski's assertion Title VII does not impose liability on individual employees.

Title VII, in relevant part, provides:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer–
>> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

13

42 U.S.C. § 2000e-2(a).  Additionally, Title VII provides:

>      (b)  The term "employer" means engaged in an
>      industry affecting commerce who has fifteen
>      or more employees . . . and any agent of such
>      a person . . .

§ 2000e(b).

The Third Circuit Court of Appeals observed Title VII does not impose liability on individual employees.  *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Sheridan v. E.I. Dupont de Nemours*, 74 F.3d 1439, 1077-78 (3d Cir. 1996).

It is undisputed Defendant Ruskoski was an employee of Swift Defendants and, thus, no liability may be imposed under a Title VII claim.[6]  We grant Defendant, John Ruskoki's, Motion for Summary Judgment (Doc. 54), dismiss Plaintiff's Complaint as to him, and dismiss him from this case.  An appropriate Order follows.

> S/Richard P. Conaboy
> RICHARD P. CONABOY
> United States District Judge

Dated: July 30, 2007

_____

_____

[6] Although not argued by Defendant Ruskoski or Plaintiff, we recognize the Pennsylvania Human Relations Act ("PHRA"), codified at 43 Pa. C.S. 955, *et seq.*, is generally applied in accordance with Title VII.  *Dici*, 91 F.3d at 552.  Thus, Defendant Ruskoski is also not a proper defendant under the PHRA and his dismissal from this case is proper.  We also note the PHRA provides for individual liability under certain circumstances, but those circumstances are not applicable in this case.  *See* 43 Pa. C.S. 955(e); *see also Dici*, 91 F.3d at 552-53.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH ANN PUNKO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 06-CV-770 |
| v. | : | |
| M.S. CARRIERS, INC., SWIFT TRANSPORTATION CO., INC., SEARS LOGISTICS SERVICES, INC., and JOHN RUSKOSKI | : | (JUDGE CONABOY) |
| Defendants. | : | |

**ORDER**

AND NOW, this 30th day of July 2007, for the reasons stated in the accompanying Memorandum, the following is ordered:

1. Defendant, John Ruskoki's, Motion for Summary Judgment (Doc. 54) is GRANTED;

2. Defendant Ruskoski is dismissed from this case; and

3. The Clerk of Court is to mark the docket.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

15