IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUTH ANN PUNKO,                    :
                                   :
     Plaintiff,                    :      CIVIL ACTION NO. 06-CV-770
                                   :
     v.                            :
                                   :
M.S. CARRIERS, INC., SWIFT         :      (JUDGE CONABOY)
TRANSPORTATION CO., INC., SEARS    :
LOGISTICS SERVICES, INC., and JOHN :
RUSKOSKI                           :
                                   :
     Defendants.                   :

### MEMORANDUM

Before the Court is Defendants M.S. Carriers, Inc. and Swift Transportation Services, Inc.'s ("Swift Defendants") Defendants' Motion for Summary Judgment (Doc. 50).  Swift Defendants' motion is fully briefed, the period for supplemental briefing has passed, and the motion is ripe for disposition.  For the following reasons, we will deny Swift Defendants' motion for summary judgment (Doc. 50).

### I.   FACTUAL BACKGROUND[1]

In November of 2002, Ruth Ann Punko ("Plaintiff") began employment as a truck driver for M.S. Carriers, Inc.[2]  On June 13,

---

[1] In her Brief in Opposition to Defendant MS Carriers/Swift's Renewed Motion for Summary Judgment (Doc. 96), Plaintiff refers the Court to Plaintiff's Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment (Doc. 81) for the factual background relative to the pending motion.  Thus, the factual background is primarily derived from Plaintiff's Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment (Doc. 81) unless otherwise cited.

[2] On January 2, 2002, Swift Transportation Co., Inc. acquired M.S. Carriers, Inc.

2001, while unloading pallets from her truck, Plaintiff sustained a knee injury requiring surgery.  Sometime in 2001, Plaintiff was released to sedentary duty at the company's facility in Ashley, Pennsylvania.  From September to December 3, 2001, Plaintiff was taken off all work because of pain and her reaction to Darvocet medication.

On December 3, 2001, Dr. O'Brien released Plaintiff back to sedentary work and she was assigned to the M.S. Carriers, Inc. office located in the Sears Terminal in Ashley.  According to Plaintiff, Terminal Manager Tom Deremer told her to report to work with the night duty employee, John Ruskoski ("Defendant Ruskoski").  Plaintiff's hours were 6:00 p.m. to 3:00 a.m.  Other than drivers handing in paperwork on their loads, Plaintiff and Defendant Ruskoski were the only employees present in the facility at night.  Plaintiff asserts she spent most of her time reading a book because there was not much for her to do.

On December 9, 2001, Plaintiff alleges she was at work when she was sexually assaulted and harassed by Defendant Ruskoski.  According to Plaintiff, Defendant Ruskoski asked her to rub his neck and help get a kink out of it.  Plaintiff states she rubbed his neck and Defendant Ruskoski started to unbutton his shirt.  As alleged by Plaintiff, she asked him what he was doing when, "he grabbed her and pushed her up against the desk and kissed her with his tongue down her throat."  (Doc. 81 at 3.)  After pushing

2

Defendant Ruskoski away, Plaintiff asserts Defendant Ruskoski felt her breasts and legs.  It is contended by Plaintiff that she told Defendant Ruskoski to stop and he did.  Plaintiff alleges Defendant Ruskoski later pinned her against a wall, kissed her, and attempted to put his hand under her sweater.  According to Plaintiff, she pushed Defendant Ruskoski away again and told him to stop.  As alleged by Plaintiff, after a period of time passed, Defendant Ruskoski told her she was beautiful, tried kissing her, and tried to push her out of the room they were in and toward the bathrooms, which she resisted.

The next day Plaintiff contacted her human relations supervisor, Mr. Coker, and reported the alleged actions of Defendant Ruskoski.  Mr. Coker referred her to Mike Crum in human relations.  After she left a message on Mr. Crum's voice mail, he called her back and told her to fax a report in 500 words or less recounting her allegation because he was leaving.  Plaintiff faxed her report.

The day after she faxed her report, Mr. Crum asked Plaintiff to send him a more detailed complaint in a couple of days. Plaintiff attempted to contact Mr. Crum and Mr. Coker on several occasions and left voice messages but never received a response.

Plaintiff contacted the Hanover Township Police Department a few days later regarding the alleged incident.  Tom Deremer spoke to Plaintiff on that Monday or Tuesday and notified her she was

being moved to the day shift.  According to Plaintiff, Mr. Deremer told her because she went to the police his office would not help her.  As asserted by Plaintiff, one of the female employees on day shift made comments to her that it was wrong to report the sexual harassment.  Additionally, Plaintiff alleges a driver made comments to her accusing people of doing wrong things and freeloading off the company every day.  Plaintiff contends she complained to Tom Mack about the driver resulting in the driver making further comments when Mr. Mack was not around.  After complaining again, Plaintiff asserts Mr. Mack stated he could not do anything about it.

On December 13, 2001, Sergeant Al Walker of the Hanover Township Police Department contacted Mr. Crum and informed him Plaintiff filed a complaint regarding the alleged incident with Defendant Ruskoski.  Mr. Crum recommended to his superior the M.S. Carriers, Inc., investigation of the incident should wait for the police to complete their investigation.

On February 22, 2002, Defendant Ruskoski resigned from M.S. Carriers, Inc.  His stated reason for leaving employment was his health.  At the time, his blood pressure was high.  A week later, his blood pressure was normal when he began employment with Martz Trailways.

On February 27, 2002, Sergeant Walker filed a criminal harassment charge against Defendant Ruskoski regarding the alleged

4

incident with Plaintiff.  On April 30, 2002, a summary trial was held before Magistrate Judge Joseph Halesey.  On May 1, 2002, the Magistrate Judge issued his decision finding Defendant Ruskoski guilty of summary harassment.

Also on May 1, 2002, Tom Mack informed Plaintiff she was being assigned to the guard shack at the terminal in Ashley effective the following Monday.  According to Plaintiff, when she inquired why she was being transferred he told her there was no room for her at the office where she had been working.  Plaintiff asserts she complained to her new supervisor "Charlie" and the "Right to Work Coordinator" named "Lena."[3]  Tom Deremer would not return her calls.

The first day Plaintiff arrived at the guard shack outside the Ashley terminal no one met her to explain her duties.  She had been told two guards would be there, but they never arrived.  On her second day, someone came and took the heater from the shack.  The third day someone took the telephone.  Plaintiff then called Tom Mack from a payphone on the side of the building.  According to Plaintiff, Mr. Mack told her she did not need a telephone because the payphone was at the location.  On the fourth day, the terminal was closed and the door locked resulting in Plaintiff no longer having access to a bathroom.  As asserted by Plaintiff, she complained to "Charlie" who told her they would get back to her.

---

[3] Later identified as Lana Hinde.  (Doc. 93 at 19.)

When no one called Plaintiff back, she call the Occupational Safety and Health Adminatration ("OSHA") and reported the lack of bathroom facilities.

Plaintiff asserts the guard shack was inappropriate because she had a knee injury and was required to walk a long distance from the shack to the drop yard where the drivers dropped the trailers. At the time, Plaintiff was restricted from walking any distance due to her knee injury even though she only logged an average of three (3) or four (4) trucks a day. Additionally, Plaintiff contends she was verbally harassed by drivers who came to the terminal alleging the drivers made comments about whether Plaintiff would file a complaint against them.

In May of 2002, Plaintiff was prescribed physical therapy which caused her to miss work. Her employer cut her pay as a result of missing work. According to Plaintiff, Tom Deremer stated she was written up for misconduct because she took too much time off for her medical appointments.

On May 26, 2002, Dr. Wolanin advised Plaintiff not to return to work because her leg was swollen and turning blue. Plaintiff gave Mr. Mack and "Lena" a doctor's note releasing her from work for May 21, 2002, through June 5, 2002. On June 3, 2002,[4] Dr. Baxi

---

[4] Although Plaintiff's Brief in Opposition to Defendant Ruskoski's Motion for Summary Judgment states Dr. Baxi restricted Plaintiff from work on June 3, 2001, we note the time line recited in Plaintiff's document suggests the correct date was June 3, 2002. (Doc. 81 at 6.)

restricted Plaintiff from work until further notice.  Plaintiff's husband delivered Dr. Baxi's note to Mr. Mack.

On December 23, 2002, Dr. O'Brien opined Plaintiff was permanently disabled from her prior employment as a truck driver and restricted her to light duty with no heat extremes.  She then faxed Dr. O'Brien's note to M.S. Carriers, Inc.

On December 27, 2002, Plaintiff received a termination notice in the mail from the Right to Work coordinator stating the reason for her termination was "driver abandonment."  Plaintiff contacted "Lena" and explained the stated reason for her termination was incorrect.  A second notice was sent stating Plaintiff quit because of illness or injury.  Again, Plaintiff contested the reason for termination and complained she had not quit.  Plaintiff had complained to "Charlie" about her termination.  "Charlie" told Plaintiff her termination was the result of her not signing a form agreeing to use her employer's Alternative Dispute Resolution process.

According to Plaintiff, the investigation conducted by her employer consisted of a request for Plaintiff to submit a complaint in writing and Mr. Crum's taped interview of Defendant Ruskoski. Plaintiff contends her employer concluded its investigation after Sergeant Walker informed Mr. Crum the police were investigating the incident.

Plaintiff asserts no disciplinary action was ever taken

against Defendant Ruskoski for the alleged incident.  The personnel file of Defendant Ruskoski provided to Plaintiff contained no notation regarding the Plaintiff's allegations of December 9, 2001.

According to Plaintiff, she suffered severe emotional and psychological trauma as a result of her transfer to the guard shack.  On December 12, 2001, Plaintiff went to the Victim's Resource Center and received counseling.  On March 26, 2002, Plaintiff began seeing Dr. Margaret Solomon from Confidential Counseling.  Dr. Solomon diagnosed Plaintiff as follows: Axis 1 - Post traumatic stress disorder; Axis III - Pain in the right knee; Axis IV - Assault; and Severity of stress - severe.  In June of 2002, Plaintiff began seeing psychiatrist Dr. Nilesh Baxi because she was not sleeping, suffering panic attacks, anxiety attacks, and she was not eating.  Plaintiff continues to be treated by Dr. Baxi to date with visits every two (2) months.

Dr. Richard Fischbein, Plaintiff's expert psychiatrist, diagnosed Plaintiff as suffering from "post traumatic stress disorder of marked severity" causing nightmares, flashbacks, fear of being around people, paranoia, suspicion, less intimacy, crying spells, and irritability.  (Doc. 81 at 9-10.)  "[Dr. Fischbein] also diagnosed her from significant depressive symptoms and agoraphobia." (*Id.* at 10.)  Additionally, Dr. Fischbein opines Plaintiff's injuries resulted from the incident on December 9, 2001, and the subsequent work events.

8

## II.   PROCEDURAL BACKGROUND

On April 13, 2006, Plaintiff Ruth Ann Punko ("Plaintiff") filed a Complaint containing seven (7) counts against the above-captioned Defendants.  (Doc. 1.)  Pursuant to this Court's Order of September 14, 2006, Counts III, V, VI, and VII of the Complaint were dismissed.  (Doc. 31.)  The remaining counts are: Count I - Title VII Civil Rights Act Sexual Harassment; Count II - Title VII Civil Rights Act Sexual Harassment - Retaliation; and Count IV - Violation of the Pennsylvania Human Relations Act Sexual Harassment.  (Doc. 1.)

On February 15, 2007, Swift Defendants filed Defendants' Motion for Summary Judgment (Doc. 50), Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. 51), Statement of Material Facts in Support of Defendants' Motion for Summary Judgment (Doc. 52), and Appendix of Record Evidence in Support of Swift Defendants' Motion for Summary Judgment (Doc. 53).[5]  On March 16, 2007, Plaintif filed Plaintiff's Counterstatement of Material Facts in Response to Defendant MS/Swift Carriers.  (Doc. 82.)  On March 19, 2007, Plaintiff filed her Brief in Opposition to Defendant MS Carriers/Swift's Motion for Summary Judgment.  (Doc.

---

[5] Also on February 15, 2007, Defendant Ruskoski filed a Motion for Summary Judgment and brief in support.  (Docs. 54, 55.)  For reasons discussed in this Court's Memorandum and Order (Doc. 100) dated July 30, 2007, Defendant Ruskoski's motion for summary judgment (Doc. 54) was granted and he was dismissed as a defendant in this action.

96.)

On March 29, 2007, Plaintiff filed Plaintiff's Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f) seeking leave of the Court to open discovery for the limited purpose of taking a deposition after the period for discovery had closed.  (Doc. 87.) On March 30, 2007, Plaintiff filed Plaintiff's Amended Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f).  (Doc. 88.)  The motion had concurrence from Swift Defendants but not Defendant Ruskoski.  (*Id.*)  Defendant Ruskoski did not file an objection to Plaintiff's motion.

On April 4, 2007, this Court issued an Order granting Plaintiff's Unopposed Joint Motion to Open Discovery Pursuant to F.R.C.P. 56(f) for the limited purpose of taking the deposition of Dennis Barry.  (*Id.*)  The limited discovery was to be completed by April 30, 2007.  (*Id.*)  The Order established a supplemental briefing schedule concerning Swift Defendants' motion for summary judgement (Doc. 50).  (Doc. 89)  Although Defendant Ruskoski did not concur in the motion, we ordered the supplemental briefing schedule would apply to his pending Motion for Summary Judgment as well.  (Doc. 89.)

On May 10, 2007, Swift Defendants filed Defendants' Renewed Motion for Summary Judgment (Doc. 91), Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judgment (Doc. 92), Statement of Material Facts in Support of Defendants' Renewed

10

Motion for Summary Judgment (Doc. 93), and Supplemental Appendix of
Record Evidence in Support of Defendants' Renewed Motion for
Summary Judgment (Doc. 94).

On May 25, 2007, Plaintiff filed Plaintiff's Counterstatement
of Material Facts in Response to Defendant MS Carriers/Swift's
Renewed Motion for Summary Judgment.  (Doc. 95.)  Also, on May 25,
2007, Plaintiff filed her Brief in Opposition to Defendant MS
Carriers/Swift's Renewed Motion for Summary Judgment.  (Doc. 96.)

On June 11, Swift Defendants filed Defendants' Reply to
Plaintiff's Memorandum of Law in Opposition to Defendants' Renewed
Motion for Summary Judgment (Doc. 98) and Supplemental Statement of
Facts in Support of Defendants' Renewed Motion for Summary Judgment
(Doc. 99).

Swift Defendants' motion is fully briefed, the period for
supplemental briefing has passed, and the motion is ripe for
disposition.

## III. DISCUSSION

Swift Defendants assert they are entitled to judgment as a
matter of law on Plaintiff's claims under Title VII and the
Pennsylvania Human Relations Act ("PHRA") for sexual harassment and
retaliation.  (Doc. 92 at 3, 17.)  Based on the following analysis,
we will deny Swift Defendants' motion.

## A.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson*, 477 U.S. at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257.  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is

an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.    THE MERITS OF SWIFT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Swift Defendants contend they are entitled to summary judgment in their favor on Plaintiff's claims as a matter of law.  (Doc. 92 at 2.)  They argue Plaintiff cannot establish a *prima facie* case

for sexual harassment or retaliation under Title VII or the PHRA.[6]
(Doc. 92 at 3, 17.)  We find Swift Defendants have not carried
their burden pursuant to the standard for summary judgment and
Plaintiff's claims will go forward.

**1.    SEXUAL HARASSMENT**

Because genuine issues of material fact persist, Swift
Defendants' motion for summary judgment (Doc. 50) is denied as to
Plaintiff's claim that sexual harassment resulted in a hostile work
environment.

Title VII, in relevant part, provides:

> (a) Employer practices
> It shall be an unlawful employment practice
> for an employer-
> > (1)to fail or refuse to hire or to
> > discharge any individual, or otherwise
> > to discriminate against any individual
> > with respect to his compensation, terms,
> > conditions or privileges of employment,
> > because of such individual's race,
> > color, religion, sex, or national origin
> > . . . [.]

42 U.S.C. § 2000e-2(a).  Additionally, Title VII provides:

> (b)  The term "employer" means engaged in an
> industry affecting commerce who has fifteen
> or more employees . . . and any agent of such
> a person . . . [.]

42 U.S.C. § 2000e(b).

_____

[6] The Third Circuit Court of Appeals has observed the analysis
for sexual harassment and retaliation claims pursuant Title VII and
the PHRA is the same because Pennsylvania courts have interpreted
the protections under the acts as interchangeable. *Weston v.
Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001).

In order to support a claim of employer discrimination resulting from a hostile work environment under Title VII, an employee must establish: "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive [or severe],[7] (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001). The Third Circuit Court of Appeals also observed:

> An employer will be liable for the harassing conduct of the alleged victim's coworker if the employer was negligent or reckless in failing to train, discipline, fire or take

---

[7] In *Andreoli*, the Third Circuit Court of Appeals stated discrimination resulting from a hostile work environment required a plaintiff to show the alleged harassing conduct was "pervasive and regular." *Andreoli*, 482 F.3d at 643. However, in *Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006), *implied overruling on other grounds recognized by Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006), the court observed a claim for a hostile work environment required the discriminatory harassment be "severe or pervasive." The *Jensen* court observed the United States Supreme Court Title VII jurisprudence applied the severe or pervasive standard and "the Supreme Court's word controls." *Id.* (citing *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Moreover, the *Jensen* Court recognized the difference in wording is meaningful where the disjunctive phrasing identifies two alternate possibilities to satisfy the standard, i.e. the harassing conduct may be either sufficiently pervasive or sufficiently severe to amount to prohibited discrimination under Title VII. *Id.*

> remedial action upon notice of the
> harassment. . . . An employer is negligent if
> it knew or should have known about the
> harassment, but failed to take prompt and
> adequate remedial action.

*Andreoli*, 482 F.3d at 644 (citations and quotations omitted).  The

court explained the determination of whether an employer took

prompt and adequate remedial action turns on "the timing and nature

of the employer's response."  *Id.*  Additionally, the court

explained, "[w]hen coworkers are the perpetrators, the plaintiff

must prove employer liability using traditional agency principles."

*Id.* at 648.

Swift Defendants argue Plaintiff cannot establish the alleged

harassment was objectively severe or pervasive.  (Doc. 92 at 4-9.)

Additionally, Swift Defendants assert Plaintiff cannot satisfy the

requirements of *respondeat superior* liability.  (*Id.* at 9-14.)

According to Swift Defendants, Plaintiff also failed to take action

to avoid or minimize the alleged harassment.  (*Id.* at 14-17.)

In this case, Plaintiff alleges she was assaulted physically

at her assigned place of work by coworker, John Ruskoski.  The

alleged assault included, in part, acts of kissing, groping

Plaintiff's breasts and legs, forcing Plaintiff against a wall, and

the coworker attempting to place his hand under Plaintiff's

sweater.  Plaintiff asserts she resisted Defendant Ruskoski's

actions.  According to Plaintiff, her shift was changed and

coworkers began making comments directed to Plaintiff as a result

of Plaintiff's complaints about Defendant Ruskoski.  Additionally, Plaintiff contends various supervisors at different levels failed to timely or meaningfully respond to her complaints regarding the actions of Defendant Ruskoski and the subsequent harassing comments by coworkers.  As alleged by Plaintiff, conditions of employment subsequent to her complaint of sexual harassment include an assignment to a guard shack with no heat, telephone, or available bathroom.  Finally, Plaintiff asserts she was terminated despite Swift Defendants' characterization of the end of her employment as voluntary.

Taking the facts in a light most favorable to the Plaintiff as the non-moving party, we find the issues presented are not appropriate for summary judgment.  A reasonable jury could find Plaintiff's allegations sufficiently severe and the her conditions of employment so altered as to amount to discrimination under Title VII.  Likewise, a reasonable jury could find Swift Defendants' response to Plaintiff's complaints were inadequate in timing and nature.  Additionally, any affirmative defenses available to Swift Defendants, including whether Plaintiff failed to mitigate or take reasonable steps to avoid her injury, are properly resolved by a jury.

Given our determination that genuine issues of material fact persist as to this claim, we will deny Swift Defendants' motion for summary judgment (Doc. 50) on Plaintiff's sexual harassment claim.

17

**2.    RETALIATION**

Because genuine issues of material fact exist, Swift Defendants' motion for summary judgment (Doc. 50) is denied as to Plaintiff's retaliatory harassment claim.

Title VII's anti-retaliation statute provides, in relevant part:

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The Third Circuit Court of Appeals observed a claim for retaliatory harassment resulting in a hostile work environment requires a plaintiff to demonstrate the following: "(1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Jensen*, 435 F.3d at 449 (footnotes omitted).

The United States Supreme Court recognized:

18

> [R]eassignment of job duties is not
> automatically actionable.  Whether a
> particular reassignment is materially adverse
> depends upon the circumstances of the
> particular case, and "should be judged from
> the perspective of a reasonable person in the
> plaintiff's position, considering 'all the
> circumstances.'"

*Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ---, 126 U.S. 2405, 2417 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).  In *Burlington*, the Supreme Court also explained, "[i]n our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (citations and quotations omitted).

Swift Defendants support their motion for summary judgment asserting Plaintiff cannot establish a casual connection between a protected activity and Swift Defendants' alleged adverse actions. (Doc. 92 at 18-20.)  Additionally, Swift Defendants contend any comments Plaintiff endured and her transfer to the Ashley terminal guard shack were not materially adverse.  (*Id.* at 21-24.)  According to Swift Defendants, even if Plaintiff can establish the elements for a prima facie case of retaliation, they are entitled to summary judgment because Plaintiff cannot prove Swift Defendants' legitimate, non-discriminatory reasons were pretextual. (*Id.* at 24-27.)

Here, Plaintiff asserts she attempted to contact various

19

supervisors to report the alleged harassment by Defendant Ruskoski the day after the incident.  According to Plaintiff, she was told to fax a report of the incident in 500 words or less because the human relations person requesting the report was late for another meeting.  Additionally, Plaintiff contends a few days after faxing the report she was requested to file a more detailed report. Plaintiff asserts she tried to speak with and left messages for the supervisors in human relations and did not receive a response.  As alleged by Plaintiff, after she filed the police report with the Hanover Township Police Department, she was contacted by supervisors informing her that she was being transferred to the day shift.  The supervisor allegedly told Plaintiff he could not help her because she went to the police.  Plaintiff alleges various coworkers made negative comments toward her in response to her filing the complaint against Defendant Ruskoski.  According to Plaintiff, when she complained to a supervisor about the comments she was told there was nothing the supervisor could do.  As asserted by Plaintiff, on May 1, 2002, the same day Defendant Ruskoski was found guilty of summary criminal harassment, she was transferred to the Ashley terminal guard shack.  Plaintiff alleges she was given inadequate instructions of her responsibilities and the shack did not have any heat, telephone or bathroom facilities available to her.  Plaintiff also contends she was terminated despite the paperwork sent to her on two separate occasions

20

describing the reason for the end of her employment as driver
abandonment and later as her having quit due to illness or injury.

Taking the facts in a light most favorable to Plaintiff as the
non-moving party, we find a reasonable jury could find a casual
connection between Plaintiff complaining of the alleged harassment
by Defendant Ruskoski and the lack of communication with Plaintiff
by supervisors addressing her complaints, managements'
unwillingness to address alleged harassing behavior after her
transfer to day shift by coworkers, her reassignment to the guard
shack and the attendant conditions she endured, and her final
termination from employment.

Viewing the circumstances in total, a reasonable jury could
find the response of Swift Defendants' to the comments endured by
Plaintiff on day shift and Plaintiff's reassignment to the Ashley
terminal guard shack that was without heat, a telephone and
bathroom facilities were materially adverse.  Likewise, whether a
reasonable person in plaintiff's position under the circumstances
would have been dissuaded from making or supporting a charge of
discrimination is most appropriately resolved by a jury.  Also, it
is the function of a jury to accept Swift Defendants' stated
reasons for Plaintiff's transfer to the guard shack and her
termination as legitimate and non-discriminatory or to reject them
as pretext for discrimination.

We will deny Swift Defendants' motion for summary judgment

21

(Doc. 50) on Plaintiff's retaliation claim because genuine issues of material fact exist.

**IV.   CONCLUSION**

Because Plaintiff's claims of sexual harassment and retaliation present genuine issues of material fact, Swift Defendants' motion for summary judgment (Doc. 50) is denied.  An appropriate Order follows.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

Dated: August 3, 2007

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUTH ANN PUNKO,                        :
                                       :
     Plaintiff,                        :     CIVIL ACTION NO. 06-CV-770
                                       :
     v.                                :
                                       :
M.S. CARRIERS, INC., SWIFT             :     (JUDGE CONABOY)
TRANSPORTATION CO., INC., SEARS        :
LOGISTICS SERVICES, INC., and JOHN     :
RUSKOSKI                               :
                                       :
     Defendants.                       :

## ORDER

AND NOW, this 3rd day of August, 2007, for the reasons stated in the accompanying Memorandum, M.S. Carriers, Inc. and Swift transportation Co., Inc.'s Defendants' Motion for Summary Judgment (Doc. 50) is DENIED.




                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge